**CC: FISCAL**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RG ABRAMS INSURANCE, et al.,

                    Plaintiffs,

      v.

THE LAW OFFICES OF C.R. ABRAMS, et al.,

                Defendants.

Case No. 2:21-cv-00194-FLA (MAAx)

**ORDER ADJUDICATING DEFENDANTS TO BE IN CONTEMPT OF COURT ORDERS, IMPOSING SANCTIONS, AND SETTING STATUS CONFERENCE [DKT. 403]**

**<u>RULING</u>**

On July 11, 2022, Magistrate Judge Maria A. Audero issued an Order Granting Plaintiffs RG Abrams Insurance and Robin Goltsman's (collectively, "Plaintiffs") Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Violation of Court Orders ("July 11, 2022 Order").  Dkt. 387.  Magistrate Judge Audero certified facts and ordered Defendants to appear before this court to Show Cause ("OSC") why: (1) Defendants/Counterclaimants Christopher R. Abrams ("Abrams"), Sarah Rinelli ("Rinelli"), Cynthia Wooten ("Wooten"), and Robin Armstrong ("Armstrong") (collectively, the "Individual Defendants") should not be adjudged in contempt and sanctioned for failure to comply with the court's Order dated December 22, 2021 ("December 22, 2021 Order," Dkt. 287);[1] and (2) Defendants/Counterclaimants The Law Offices of C.R. Abrams, PC ("Abrams PC") and Rinelli Law Group, PC ("Rinelli LG") (collectively, the "Entity Defendants") should not be adjudged in contempt and sanctioned for failure to comply with the court's Order dated January 19, 2022 ("January 19, 2022 Order," Dkt. 315).  Dkt. 387 at 4-7.[2]  The OSC came to hearing on December 16, 2022 (the "December 16, 2022 Hearing").  Dkt. 409.

For the reasons stated herein, the court FINDS by clear and convincing evidence and ADJUDGES the Individual Defendants to be in contempt of the December 22, 2021 Order (Dkt. 287).  The court further FINDS by clear and convincing evidence and ADJUDGES the Entity Defendants to be in contempt of the January 19, 2022 Order (Dkt. 315).

---

[1] The Magistrate Judge did not include Defendant Jack R. Mills ("Mills") within the scope of the July 11, 2022 Order (Dkt. 387).  Accordingly, Defendant Mills is excluded from the scope of this Order and the monetary sanctions awarded against the other Defendants.  *See* Dkt. 403 at 2 n. 1.

[2] The court, herein, refers to the page numbers of docket entries according to the page numbers assigned by the court's CM/ECF header.

Accordingly, the court ORDERS:

1. The Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong), jointly and severally, shall pay Plaintiffs $2,856.37 in total compensatory monetary sanctions (representing $2,226.37 under Item 4 and $630 under Item 5 of the December 22, 2021 Order), by no later than January 16, 2023.  This is the remaining amount ordered to be paid under the December 22, 2021 Order for the reasonable attorney's fees and expenses Plaintiffs incurred due to the Individual Defendants' refusals to answer questions at deposition.  Dkt. 287 at 64, Dkt. 387 at 5-7.

2. The Entity Defendants (Abrams PC and Rinelli LG), jointly and severally, shall pay Plaintiffs $2,415.00 in compensatory monetary sanctions, by no later than January 16, 2023.  This is the amount ordered to be paid under the January 19, 2022 Order for the reasonable attorney's fees and expenses Plaintiffs incurred in bringing a motion to compel responses to Plaintiffs' requests for production of documents.  Dkt. 315 at 54, Dkt. 387 at 7.

3. The Individual and Entity Defendants, jointly and severally, shall pay Plaintiffs $6,210.00 in compensatory monetary sanctions, which reflects the reasonable attorney's fees and expenses Plaintiffs incurred in connection with bringing the subject Motion for OSC, Dkt. 363, and related proceedings.  The Individual and Entity Defendants shall make this payment by no later than February 16, 2023.

4. The Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong), jointly and severally, shall pay to the court a per diem fine of $100.00 commencing December 19, 2022, for each day that all amounts owed under the December 22, 2021 Order remain due and unpaid.

5. The Entity Defendants (Abrams PC and Rinelli LG), jointly and severally, shall pay to the court a per diem fine of $100.00 commencing December 19, 2022, for each day that all amounts owed under the January 19, 2022

1   Order remain due and unpaid.

2       6. In the event the amounts due under the December 22, 2021 Order and the

3   applicable per diem fines ordered by the court have not been paid in full by

4   January 16, 2023, the Individual Defendants (Abrams, Rinelli, Wooten,

5   and Armstrong) shall appear in Courtroom 6B on January 20, 2023 at 1:30

6   p.m., for surrender to the U.S. Marshal's Service, where they shall remain

7   in custody until the amounts are paid.  The court will issue an arrest

8   warrant for any of the Individual Defendants who fails to appear for self-

9   surrender on January 20, 2023, if the amounts due have not been paid.

10      The court will purge the contempt as to the Individual Defendants (Abrams,

11  Rinelli, Wooten, and Armstrong) and the Entity Defendants (Abrams PC and Rinelli

12  LG) only upon a joint filing by Plaintiffs and these Defendants, in which Plaintiffs and

13  Defendants' counsel attest under penalty of perjury that these Defendants have paid

14  Plaintiffs, and that Plaintiffs have received, all amounts due under the December 22,

15  2021 and January 19, 2022 Orders, and that Defendants have paid all applicable per

16  diem fines to the court.

17  **BACKGROUND [3]**

18      On February 24, 2020, Plaintiffs filed the Complaint in this action in the United

19  States District Court for the Northern District of California.  Dkt. (Compl.) 1.

20  Plaintiffs assert a single federal claim for violation of the Computer Fraud and Abuse

21  Act ("CFAA"), 18 U.S.C. § 1030 (against all Defendants), *id*. at 11-12 (Count I) ¶¶ 1-

22  6, and state law claims for fraud and intentional deceit (against Mills, Wooten, and

23  Armstrong), negligent misrepresentation (against Mills, Wooten, and Armstrong),

24  intentional interference with prospective economic advantage (against all Defendants),

25  negligent interference with prospective economic advantage (against Mills, Wooten,

26

27
28  [3] As the parties are familiar with the factual and procedural background of this action, the court includes only the factual background necessary to rule on the instant OSC.

and Armstrong), conversion (against all Defendants), breach of contract (against Abrams, Rinelli, and Mills), breach of the implied covenant of good faith and fair dealing (against Abrams, Rinelli, and Mills), breach of fiduciary duty and duty of loyalty (against Wooten and Armstrong), unjust enrichment and promissory estoppel (against all Defendants), and civil conspiracy (against all Defendants). *Id*. at 11-20, ¶¶ 1-72.

On December 22, 2021, the Magistrate Judge issued an Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Additional Depositions of Defendants (December 22, 2021 Order). Dkt. 276. The Magistrate Judge found, in relevant part, that Defendants' counsel, Timothy Donahue ("Mr. Donahue"), improperly instructed Abrams, Rinelli, Armstrong, and Wooten not to answer multiple questions at their respective depositions and frustrated and impeded the fair examinations of the deponents within the meaning of Fed. R. Civ. P. 30(d)(3) ("Rule 30(d)(3)"). Dkt. 287 at 45-48, 63-64. Accordingly, the Magistrate Judge granted Plaintiffs' request for additional depositions of the Individual Defendants and ordered these Defendants and their counsel to pay the reasonable costs therefor, with fifty percent (50%) to be paid jointly and severally by the Individual Defendants, and fifty percent (50%) to be paid by Mr. Donahue. *Id.* at 49-50, 63-64. This payment was to be made by no later than fifteen (15) calendar days after Plaintiffs provided the Individual Defendants with an accounting of the costs associated with the depositions. *Id.* at 64. The Magistrate Judge additionally granted Plaintiffs compensatory monetary sanctions of $630.00 to reflect the reasonable expenses expended in bringing the Motion, with these sanctions to be paid by no later than thirty (30) days after the date of the Order. *Id.* at 57, 64.

On January 19, 2022, the Magistrate Judge issued an Order Granting Plaintiffs' Motion to Compel Entity Defendants' Responses to Plaintiffs' Requests for Production of Documents, Set One (January 19, 2022). Dkt. 315. In relevant part, the Magistrate Judge ordered the Entity Defendants to supplement their responses to

Plaintiffs' Requests for Production of Documents, Set One ("RFPs"), and pay Plaintiffs by no later than thirty (30) days after the date of the Order, jointly and severally, $2,415.00 for the reasonable expenses Plaintiffs incurred in connection with the Motion, pursuant to Fed. R. Civ. P. 37(a)(5)(A) ("Rule 37(a)(5)(A)").  Dkt. 315 at 53-54.  The Magistrate Judge expressly cautioned the Entity Defendants that failure to comply with the Order may be treated as contempt of court and result in the imposition of additional sanctions under Rule 37(b)(2)(A).  Dkt. 315 at 54.

On May 26, 2022, Plaintiffs filed a Motion for an Order to Show Cause Why Defendants Should Not be Held in Contempt for Violation of Court Orders ("Motion for OSC").  Dkt. 363.  On June 10, 2022, Plaintiffs filed a reply in support of the Motion for OSC, stating Defendants had failed to respond timely.  Dkt. 364.  On June 13, 2022, Defendants filed an untimely opposition.  Dkt. 365.  On June 21, 2022, Plaintiffs filed a second reply in response to the opposition.  Dkt. 374.

On July 11, 2022, the Magistrate Judge issued an Order granting Plaintiffs' Motion for OSC (July 11, 2022 Order), and certified the following facts to this court pursuant to 28 U.S.C. § 636(e)(6)(B)(iii):

**The Complaint and Counter-Claim:**

1. On February 24, 2020, Plaintiffs filed their Complaint in the United States District Court for the Northern District of California against Defendants.  Dkt. 1.

2. On April 22, 2020, Defendants answered the Complaint and Christopher R. Abrams filed a counter-claim against Plaintiffs.  Dkts. 18, 19.

3. On June 12, 2020, Sarah Rinelli and Jack R. Mills filed a counter-claim against Plaintiffs.  Dkt. 23.

4. On June 12, 2020, Robin Armstrong and Cynthia Wooten filed a counter-claim against Plaintiffs.  Dkt. 24.

5. On December 13, 2021, Entity Defendants filed a counter-claim against Plaintiffs and Core Seminars.  Dkt. 282.

/ / /

**Item 4 of the December 22 Order:**

6.   On December 22, 2021, in connection with Plaintiffs' motion to compel additional depositions of Individual Defendants and Jack Mills ("Deposition Motion") (Dep. Mot., Dkt. 276), the Court ordered as follows:

> **As soon as practicable after the conclusion of the four depositions**, Plaintiffs shall provide to Defendants an accounting of the costs associated with the four depositions, as detailed in this Order, which [Individual Defendants] and their counsel shall pay to Plaintiff's counsel, pursuant to Rule 30(d)(2), **by no later than fifteen calendar days after receipt of said accounting**. The payment shall be made fifty percent (50%) by [Individual Defendants] jointly and severally, on the one hand, and fifty percent (50%) by Defendants' counsel, on the other.

("Item 4 of the December 22 Order").  Dkt. 287 at 64.

7.   On March 22, 2022, Plaintiffs' counsel provided Defendants with an accounting of $4,452.75 in costs Plaintiffs incurred taking the court-ordered depositions of Individual Defendants.  Dkt. 363-3 (Horstmann Decl.) ¶ 4; Dkt. 363-4 (Pls. Ex. B).

8.   Thus, compliance with Item 4 of the December 22 Order was due by no later than April 6, 2022.  *See* Dkt. 363-3 (Horstmann Decl.) ¶ 5.

9.   On April 15, 2022, Defendants' counsel sent Plaintiffs' counsel a letter enclosing a check for $2,543.37, which Defendants' counsel stated "represent[ed] half of the reporter's fees and the attorney fees awarded."  Dkt. 363-3 (Horstmann Decl.) ¶ 4; Dkt. 363-5 (Pls. Ex. C).

10.   On May 12, 16, 17, 18, and 20, 2022, counsel for Plaintiffs contacted counsel for Individual Defendants to notify him of the unpaid balance under Item 4 of the December 22 Order and provided extensions until May 16, 20, and 25, 2022 to make the remaining payment of $2,226.37 due under Item 4 of the December 22 Order.  Dkt. 363-1 (Slater Decl.) ¶¶ 3-4; Dkt. 363-2 (Pls. Ex. A).

11.   As of May 26, 2022, the date of the filing of the Motion, Individual Defendants had not complied with their obligation under Item 4 of the December 22 Order.  *See* Dkt. 363-1 (Slater Decl.) ¶ 4.

///

**Item 5 of the December 22 Order:**

12. On December 22, 2021, in connection with the Deposition Motion, the Court ordered Individual Defendants to pay a portion of Plaintiffs' attorneys' fees, as their reasonable expenses incurred in bringing the Deposition Motion, as follows:

> [Individual Defendants] shall pay to Plaintiff, jointly and severally, the sum of $630.00 as reasonable expenses pursuant to Rule[] 37(a)(5)(A). This payment shall be made **by no later than thirty (30) days after the date of this Order**.

("Item 5 of the December 22 Order"). Dkt. 287 at 64.

13. Thus, compliance with Item 5 of the December 22 Order was due by no later than January 21, 2022.

14. On May 12, 16, 17, 18, and 20, 2022, Plaintiffs' counsel contacted Individual Defendants' counsel regarding the lack of compliance with Item 5 of the December 22 Order and provided extensions until May 16, 20, and 25, 2022 to make payments due under Item 5. Dkt. 363-1 (Slater Decl.) ¶¶ 3-4; Dkt. 363-2 (Pls. Ex. A).

15. As of May 26, 2022, the date of the filing of the Motion, Individual Defendants had not complied with Item 5 of the December 22 Order. *See* Dkt. Slater Decl. ¶ 4.)

**The Court's January 19, 2022 Order:**

16. On January 19, 2022, in connection with Plaintiffs' motion to compel Entity Defendants' responses to Plaintiffs' requests for production of documents, set one ("RFP-1 Motion") (RFP-1 Mot., Dkt. 280 at 27-40), the Court ordered as follows:

> The Entity Defendants shall pay to Plaintiffs, jointly and severally, the sum of $**2,415.00** as reasonable expenses incurred in the bringing of the RFP-1 Motion pursuant to Rule 37(a)(5)(A). This payment shall be made **by no later than thirty days after the date of this Order**.

Dkt. 315 at 54.

17. Thus, compliance with the January 19 Order was due by no later than February 18, 2022.

18. On May 12, 2022, Plaintiffs' counsel contacted Entity Defendants' counsel regarding the lack of compliance with the January 19 Order. Dkt. 363-1 (Slater Decl.) ¶ 3; Dkt. 363-2 (Pls. Ex. A) at 10.

19. As of May 26, 2022, the date of the filing of the Motion, Entity
    Defendants had not complied with the January 19 Order.  Dkt. 363-3
    (Horstmann Decl.) ¶ 7.

Dkt. 387 at 4-7 (emphasis in original) (citations to the docket modified to conform to
the court's preferred format).

The Magistrate Judge further ordered the Individual and Entity Defendants to
appear before this court, on a date and time to be set by this court, to show cause why
they should not be adjudged in contempt by reasons of the certified facts.  *Id.* at 28.
Recognizing that her authority in this context was limited to certifying the facts and
determining whether Plaintiffs had established a prima facie case of contempt, the
Magistrate Judge left Defendants' arguments regarding the merits of a contempt
finding for this court to consider and decide.  *Id.* at 26 (citing 28 U.S.C. § 636(e)).

## DISCUSSION

## I.   Legal Standard

It is well-established that "courts have inherent power to enforce compliance
with their lawful orders through civil contempt."  *Shillitani v. United States*, 384 U.S.
364, 370 (1966); *see Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991).  Punishment
for civil contempt is usually considered to be remedial and is designed to enforce
compliance with a court order.  *United States v. Powers*, 629 F.2d 619, 627 (9th Cir.
1980).

An order holding a party in contempt is appropriate "[i]f a person disobeys a
specific and definite court order" by failing to take "all the reasonable steps within his
power to [ensure] compliance with the court's order."  *In re Crystal Palace Gambling
Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (citing *Shuffler v. Heritage Bank*, 720
F.2d 1141, 1146 (9th Cir. 1983)) (quotation marks and brackets omitted).  In the Ninth
Circuit, a party alleging that another person should be held in civil contempt must
establish by clear and convincing evidence that the alleged contemnor (1) "violated
the court order," (2) "beyond substantial compliance," (3) "not based on a good faith
and reasonable interpretation of the order."  *Lab./Cmty. Strategy Ctr. v. L.A. Cnty.*

1    *Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quotations omitted).

2       Once a prima facie showing of civil contempt is made, the burden shifts to the

3 alleged contemnor to "produce evidence explaining his noncompliance." *United*

4 *States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (quotations omitted).  While the

5 inability to comply with a court order may be a defense to contempt, the party

6 asserting that defense must show "categorically and in detail" why compliance is

7 impossible.  *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1240-41 (9th Cir. 1999).

8 It is well-established that a party petitioning for an adjudication that another party is in

9 civil contempt does not have the burden of showing that the other party has the

10 capacity to comply with the court's order.  *E.g.*, *NLRB v. Trans Ocean Export*

11 *Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).

12       Civil contempt is generally viewed under an objective standard, and "a party's

13 subjective belief that she was complying with an order ordinarily will not insulate her

14 from civil contempt if that belief was objectively unreasonable." *Taggart v. Lorenzen*,

15 139 S. Ct. 1795, 1802 (2019).  As the purpose of civil contempt is remedial,

16 willfulness is not a necessary element for civil contempt.  *Perry v. O'Donnell*, 759

17 F.2d 702, 705 (9th Cir. 1985) (citing, *e.g.*, *McComb v. Jacksonville Paper Co.*, 336

18 U.S. 189, 191 (1949)).  Ordinarily, "[i]t does not matter what the intent of the [party]

19 was when [it] violated the court's order." *In re Crystal Palace*, 817 F.2d at 1365

20 (citing *McComb*, 336 U.S. at 191).  Nevertheless, courts may consider a noncompliant

21 party's subjective intent in making a contempt determination, as "civil contempt

22 sanctions may be warranted when a party acts in bad faith," and "a party's good faith,

23 even where it does not bar civil contempt, may help to determine an appropriate

24 sanction." *Taggart*, 139 S. Ct. at 1802 (citations omitted); *see also Stone v. City &*

25 *County of San Francisco*, 968 F.2d 850, 856-57 (9th Cir. 1992) (In determining

26 whether a party performed "all reasonable steps within their power to [ensure]

27 compliance," courts have considered factors including "the [party's] history of

28 noncompliance" and "the failure to comply despite the pendency of the contempt

motion."), *cert. denied*, 506 U.S. 1081 (1993). "[A] party's record of continuing and persistent violations and persistent contumacy justifie[s] placing the burden of any uncertainty in the decree … on [the] shoulders of the party who violated the order." *Taggart*, 139 S. Ct. at 1802 (quotations omitted).

"Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required" than for criminal contempt. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). "Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Id.* at 826 (citations omitted). "In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id.* at 827. "Neither a jury trial nor proof beyond a reasonable doubt is required." *Id.* While "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits, … where the affidavits offered in support of a finding of contempt are *uncontroverted*, … a district court's decision not to hold a full-blown evidentiary hearing does not violate due process." *Ayres*, 166 F.3d at 995 (citations omitted, emphasis in original); *id.* at 996 (finding no denial of due process "given 'the overwhelming evidence' supporting the contempt motion and the fact that the alleged contemnors 'did not present any arguments which created any material issue of fact'").

## II. Whether the Individual and Entity Defendants Should Be Held in Civil Contempt

### A. Prima Facie Showing of Civil Contempt

With regard to the December 22, 2021 Order, the Magistrate Judge found and certified to this court facts including that: (1) on December 22, 2021, the court ordered the Individual Defendants to pay Plaintiffs' counsel the costs associated with these

Defendants' additional depositions by no later than fifteen calendar days after receipt of an accounting from Plaintiffs' counsel; (2) on March 22, 2022, Plaintiffs' counsel provided the Individual Defendants with an accounting of $4,452.75 in costs incurred in taking the Individual Defendants' additional depositions; (3) on December 22, 2021, the court additionally ordered the Individual Defendants, jointly and severally, to pay Plaintiffs $630.00 as reasonable expenses, pursuant to Rule 37(a)(5)(A); (4) compliance with the December 22, 2021 Order was due by no later than April 6, 2022 and January 21, 2022, respectively, for these portions of the Order; (5) on April 15, 2022, Defendants' counsel sent Plaintiffs' counsel a letter enclosing a check for $2,543.37, which Defendants' counsel stated "represent[ed] half of the reporter's fees and the attorney fees awarded"; and (6) as of May 26, 2022, the Individual Defendants had not paid the remainder of the amounts ordered and due under the December 22, 2021 Order.  Dkt. 387 at 5-6.

At the December 16, 2022 Hearing, Defendants' counsel, Mr. Donahue, stated that the $2,543.37 was written from his personal bank account and comprised his share only of the sanctions awarded in the December 22, 2021 Order.[4]  Accordingly, the Individual Defendants remain jointly and severally liable for their half of the $4,452.75 sanctions awarded in Item 4 of the December 22, 2021 Order, in the amount of $2,226.37, as well as the entirety of the $630.00 sanctions awarded in Item 5. Together, this comes to total unpaid monetary sanctions of $2,856.37 under the December 22, 2021 Order.

/ / /

---

[4] At the December 16, 2022 Hearing, Plaintiffs' counsel stated he did not believe Plaintiffs had deposited Defendants' counsel's check, since the amount of the check did not match any sanction owed and Plaintiffs were unclear how the sums were to be allocated.  The parties' counsel stated they would meet and confer regarding the issue, with Plaintiffs to repay Defendants' counsel the excess sums if the check was deposited, and Defendants' counsel to provide a new form of payment if the original check was no longer valid.

With respect to the January 19, 2022 Order, the Magistrate Judge found and certified to this court facts including that: (1) on January 19, 2022, the court ordered the Entity Defendants, jointly and severally, to pay Plaintiffs $2,415.00, as reasonable expenses incurred in bringing their motion to compel further responses to RFPs, by no later than thirty days after the date of the Order; (2) compliance with the January 19, 2022 Order was due by no later than February 18, 2022; and (3) as of May 26, 2022, the Entity Defendants had not complied with the January 19, 2022 Order. Dkt. 387 at 7. Accordingly, the Entity Defendants remain jointly and severally liable for the unpaid sanctions of $2,415.00 under the January 19, 2022 Order.

At the December 16, 2022 Hearing, Plaintiffs' counsel, Michael A. Slater ("Mr. Slater"), stated that the amounts outstanding under the December 22, 2021 and January 19, 2022 Orders still had not been paid, despite Plaintiffs' multiple requests for payment. *See also* Dkt. 363-1 (Slater Decl.) ¶¶ 3-4; Dkt. 363-2 (Ex. A). The Individual and Entity Defendants did not dispute that they have not made any payments to Plaintiffs or challenge the validity of Plaintiffs' evidence submitted.

The court, therefore, agrees with the Magistrate Judge that Plaintiffs have presented sufficient evidence to establish a prima facie case of civil contempt. Dkt. 387 at 19.

**B.      The Individual and Entity Defendants' Arguments Regarding Non-Compliance**

Once a prima facie showing of civil contempt is made, the burden shifts to the alleged contemnor to "produce evidence explaining his noncompliance." *Ayres*, 166 F.3d at 994. The Individual and Entity Defendants do not provide any explanation for their noncompliance or any evidence to challenge Plaintiffs' evidentiary showing. Instead, Defendants raise several arguments that the court finds unpersuasive.[5]

---

[5] Defendants' opposition briefs are difficult to follow and/or incomprehensible, as they comprise largely statements regarding general legal principles that concern

First, the Individual and Entity Defendants contend the court lacks the authority to impose contempt sanctions for their nonpayment of court-ordered costs and fees. Dkt. 354 at 4; Dkt. 407 at 6.  Defendants cite *Motown Record Corp. v. Superior Court*, 155 Cal. App. 3d 482 (1984), to argue "[s]anctions cannot be imposed upon a party for nonpayment" and "[s]anctions for nonpayment is not authorized by law." Dkt. 354 at 4; Dkt. 407 at 6.

In *Motown*, 155 Cal. App. 3d at 489-90, the California Court of Appeal held that a state trial court must find a party willfully refused to obey an order directing discovery before the court could impose severe discovery sanctions under former California Code of Civil Procedure § 2034(b)(2) ("former Section 2034").  The California Code of Civil Procedure, including Title 4 of Part 4 (the Civil Discovery Act), does not apply to federal courts.  *See* Fed. R. Civ. P. 1.  Furthermore, former Section 2034 was repealed in 1986, and does not appear to remain good law.  *See*

---

irrelevant matters, are internally inconsistent, and/or are asserted without any discussion of how the stated principles apply to the facts and issue at hand—whether the court should impose civil sanctions for these Defendants' failure to pay compensatory monetary sanctions awarded by the court in the December 22, 2021 and January 19, 2022 Orders.  *See, e.g.*, Dkt. 365 at 5 & Dkt. 407 at 6-7 (discussing terminating sanctions, which are not at issue here); Dkt. 407 at 4-5 (stating "contempt proceedings are always criminal" under Fed. R. Civ. P. 69(a) and California law, but also stating "[t]he scope of a sanctioned party's due process rights depends upon whether the contempt is civil or criminal"); Dkt. 407 at 5 (stating "Defendant asserts all rights and privileges, including Fifth Amendment, attorney-client privilege, advice of counsel and litigation privilege," without any discussion of how such "rights and privileges" are relevant here).  Furthermore, many, if not most, of Defendants' citations either do not support the propositions for which they are cited or are entirely inapposite.  *See, e.g.*, Dkt. 407 at 6 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 484 (1941), which concerned "whether in diversity cases the federal courts must follow conflict of laws rules prevailing in the states in which they sit" (emphasis added) (erroneously cited as "Claxon -v- Stentor 311. US. 487, 494 (1941 )")); Dkt. 407 at 6 (citing *Societe Internationale Pour Participations v. Rogers*, 357 U.S. 197, 209 (1958), which concerned limitations on courts' ability to dismiss an action based on a party's inability to produce specific information in discovery); Dkt. 365 at 2 (citing Cal. Code Civ. Proc. §§ 128 & 128.5, which do not apply to federal courts).

1   *Liberty Mut. Fire Ins. Co. v. LcL Adm'rs, Inc.*, 163 Cal. App. 4th 1093, 1106 (2008)

2   ("*Motown* [citation omitted], was decided prior to the Civil Discovery Act of 1986,

3   and is not relevant here.").

4           Even if *Motown* were still valid and applied to this court, that decision does not

5   support Defendants' assertion that sanctions cannot be imposed on a party for

6   nonpayment.  In *Motown*, 155 Cal. App. 3d at 488-89, the California Court of Appeal

7   recognized that former Section 2034(b)(2) "provide[d] that when a party 'refuse[d]' to

8   obey an order directing discovery 'the court [could] make any orders in regard to the

9   refusal which [were] just, including, but not limited to … (D) requiring the

10  disobedient party to pay to the party obtaining the order the reasonable expenses

11  incurred, including attorneys' fees, and (E) directing the arrest of the disobedient

12  party."  The court further recognized former Section 2034(a) authorized contempt

13  punishment.  *Id.* at 489.[6]  Defendants' argument, thus, fails.

14          Second, the Individual and Entity Defendants argue Plaintiffs fail to show these

15  Defendants violated "a specific and definite order," and that they have complied fully

16  with the Magistrate Judge's orders "as written."  Dkt. 365 at 2-3; Dkt. 407 at 1, 5, 7.

17  The court disagrees for the reasons stated in the July 11, 2022 Order, which the court

18  incorporates by reference.  Dkt. 387 at 19-24.  The court, similarly, rejects these

19  Defendants' arguments regarding Plaintiffs' purported failure to satisfy their burden to

20  show the Individual and Entity Defendants acted willfully or had the capacity to

21  _____

22  [6] *Motown*, 155 Cal. App. 3d at 489, also held that "[t]o justify imposition of such

23  discovery sanctions, the trial court must expressly find that the disobedient party's
    failure to obey was wilful."  As stated, however, neither former Section 2034 nor

24  *Motown* apply to federal courts; but even if they did, the Individual and Entity

25  Defendants' failure to provide any explanation for their failure to pay the sanctions
    ordered in the December 22, 2021 and January 19, 2022 Orders, despite Plaintiffs'

26  repeated requests for payment and the court's prior order finding Defendants in
    contempt for their failure to pay court-ordered sanctions (Dkt. 251), would be

27  sufficient to establish that these Defendants' failure to comply with the court orders

28  was willful.

comply, as Plaintiffs do not bear the burden to demonstrate either to establish a prima facie showing of civil contempt in this court.[7]  *See* Dkt. 387 at 24-26; *NLRB*, 473 F.2d at 616; *Perry*, 759 F.2d at 705.  Nevertheless, as stated herein, the evidence in the record is sufficient to demonstrate these Defendants' conduct was willful and that they had the capacity to comply.

Third, the Individual and Entity Defendants argue that it would violate the Equal Protection and Due Process clauses of the Fourteenth Amendment to find litigants in contempt for failure to pay amounts due when they are "low on money" and are unable to pay.  Dkt. 365 at 5; Dkt. 407 at 8.  Defendants, however, do not argue expressly or present evidence to establish that they are unable to pay.

When asked pointedly at the December 16, 2022 Hearing if they were claiming they were unable to pay, Defendants' counsel demurred repeatedly and declined to provide a substantive response, stating only that these Defendants "have been subjected to … injustice and have paid a lot of money and things are hard out there … [t]hings are hard out on the streets for people."  When pressed further on the issue by the court, Defendants' counsel stated only that these Defendants did not bear the burden to demonstrate inability to pay and that he had nothing more to add beyond what was stated in the opposition papers.  The oppositions, in turn, state in relevant part:

> The US Supreme Court in Bearden -vs- Georgia  461 U.S. 660, 669 ;
> ruled a violation of equal protection and due process under the 14th
> amendment, for attempting to punish one for inability  to pay.
> People -v- Duenas ( 2019 ) 30 Cal App 5th, 1157.  The court held no

---

[7] Defendants previously raised identical arguments in their opposition to the court's prior order to show cause why Defendants should not be held in contempt.  *See* Dkt. 242.  The court addressed these arguments in detail in its prior Order, dated November 9, 2021 ("November 9, 2021 Order"), finding Defendants in contempt for their previous failure to pay other monetary sanctions awarded by the court.  Dkt. 251 at 10-15.  Defendants' arguments regarding the court's authority additionally fail for the reasons previously stated.  *See id.*

1
2
>            rational purpose for attempting to punish a person low on money.
>            (this was before Covid).  Covid is a national health & financial crisis
>            and worldwide financial crisis.

3  Dkt. 407 at 8 (all punctuation, grammatical, typographical, and citation errors in

4  original); Dkt. 365 at 5 (stating the same, except the final two sentences regarding the

5  COVID-19 pandemic).  This is the exact same statement the court found insufficient

6  in the prior contempt proceedings and in its November 9, 2021 Order.  Dkt. 251 at 14

7  (discussing Dkt. 91 at 6-7).

8        Even if the court were to accept this statement as an affirmative assertion of

9  these Defendants' inability to pay, Defendants fail to show that they are so unable.  As

10 stated, while a party's inability to comply with a court order may be a defense to

11 contempt, the party asserting that defense must show "categorically and in detail" why

12 compliance is impossible.  Dkt. 251 at 13-14 (citing *Affordable Media,* 179 F.3d at

13 1240-41); *see also United States v. Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981) ("It

14 is settled … that in raising this defense, the defendant has a burden of production."),

15 *rev'd on other grounds*, 460 U.S. 752 (1983).

16       Defendants have not submitted any evidence to the court regarding their

17 financial condition or to establish their inability to pay the sanctions ordered.  *See*

18 Dkts. 365, 407.  At the December 16, 2022 Hearing, Defendants' counsel did not

19 dispute the absence of any evidence in the record to demonstrate that the Individual

20 and Entity Defendants are unable to pay the sanctions ordered, and admitted that these

21 Defendants will be paying these sanctions to avoid the coercive sanctions ordered

22 below.  Accordingly, the court finds that these Defendants have not asserted

23 affirmatively their inability to comply with the December 22, 2021 and January 19,

24 2022 Orders, or established "categorically and in detail" why compliance is

25 impossible, as required.  *See Affordable Media,* 179 F.3d at 1240-41.

26       Finally, the Individual and Entity Defendants appear to reargue issues that were

27 decided previously by the court, and are irrelevant to the OSC at hand, including: (1)

28 whether this court has subject matter jurisdiction over this action (*compare* Dkt. 407 at

4 *with* Dkt. 225 (denying Defendants' renewed Motion to Dismiss)); (2) whether

Defendants can seek the Magistrate Judge's recusal pursuant to 28 U.S.C. § 455

(*compare* Dkt. 407 at 2-4 *with* Dkt. 401 at 2 (ruling Section 455, "on its face, concerns

self-disqualification or recusal from a proceeding by a judge" and that Defendants'

request for disqualification may be brought only through a noticed motion)); and (3)

whether the court's November 2, 2022 Order, accepting the Magistrate Judge's Report

and Recommendation and issuing sanctions against Defendants for unrelated conduct,

was properly decided (*compare* Dkt. 407 at 8, 11 *with* Dkts 384, 401).  As these

arguments are irrelevant to the civil contempt determination at hand and Defendants

did not move timely for reconsideration of the court's prior rulings, the court

DISREGARDS these arguments without further discussion.  *See* Local Rule 7-18.

For these reasons, the court finds the Individual and Entity Defendants have

failed to meet their burden to "produce evidence explaining [their] noncompliance."

*See Ayres*, 166 F.3d at 994.

### C.    Conclusion Regarding Contempt

In sum, Plaintiffs have met their burden to establish a prima facie showing that

the Individual Defendants are in contempt of the December 22, 2021 Order, and that

the Entity Defendants are in contempt of the January 19, 2022 Order.  These

Defendants, in turn, have failed to produce evidence explaining their noncompliance.

The court, therefore, FINDS by clear and convincing evidence and ADJUDGES

the Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong) to be in

contempt of the December 22, 2021 Order.  The court further FINDS by clear and

convincing evidence and ADJUDGES the Entity Defendants (Abrams Law and

Rinelli Law) to be in contempt of the January 19, 2022 Order.

### III.   Sanctions

### A.    Legal Standard for Sanctions

"Sanctions for civil contempt may be imposed to coerce obedience to a court

order, or to compensate the party pursuing the contempt action for injuries resulting

18

from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Accordingly, there are two types of civil contempt sanctions—coercive and compensatory—and the district court may impose sanctions for either or both of these purposes. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778-79 (9th Cir. 1983); *United States v. United Mine Workers of America* ("*UMWA*"), 330 U.S. 258, 303-04 (1947). The Ninth Circuit "defer[s] considerably to the judgment of the district court in fashioning the appropriate sentence because of its proximity to the events out of which contempt springs." *United States v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980). In issuing such sanctions, the district court is required to make "a statement of the purpose or purposes" that underlie a sanction for civil contempt. *Shuffler*, 720 F.2d at 1147.

Compensatory sanctions are intended "to compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff*, 702 F.2d at 778. "Where compensation is intended, a fine is imposed, payable to the complainant." *UMWA*, 330 U.S. at 304. "Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *Id*.

A court may award the moving party's attorneys' fees in obtaining the contempt finding as a form of compensatory contempt sanction. *See*, *e.g.*, *Donovan v. Burlington N.*, 781 F.2d 680, 684 (9th Cir. 1986) (quoting *Perry*, 759 F.2d at 705) (recognizing "the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party") (citation and brackets omitted). Whether to award fees and expenses as a remedial measure in a contempt action is left to the discretion of the district court. *Perry*, 759 F.2d at 705-06.

The Ninth Circuit has adopted the "lodestar" approach for assessing the award of attorney fees, under which "[t]he 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th

Cir. 2008) (citation omitted).  A party seeking an award of attorney's fees "must submit evidence to support the number of hours worked and the rates claimed." *Global Ampersand, LLC v. Crown Eng'g & Constr.*, 261 F.R.D. 495, 502 (E.D. Cal. 2009) (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).

Coercive sanctions, in contrast to compensatory sanctions, are intended "to coerce the defendant into compliance with the court's order[.]"  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016).  A court may issue coercive sanctions to force a party's compliance with its discovery obligations.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) ("Where the purpose of a civil contempt sanction is to coerce good faith efforts to comply with a discovery request, contempt is proper.").  A "district court should apply the least coercive sanction … reasonably calculated to win compliance with its orders." *Flores*, 628 F.2d at 527 (citations omitted).  "A court, in determining the amount and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (quoting *UMWA*, 330 U.S. at 304; *Gen. Signal*, 787 F.2d at 1380; *Shuffler*, 720 F.2d at 1148).

One type of civil contempt coercive sanction is a per diem fine payable to the court and imposed for each day a contemnor fails to comply with an affirmative court order.  *Ayres*, 166 F.3d at 995; *see also, e.g., A&F Bahamas, LLC v. World Venture Grp.*, Case No. 2:17-cv-08523-VAP (SSx), 2019 U.S. Dist. LEXIS 128859, at *13-14 (C.D. Cal. June 7, 2019) (recommending the contemnor pay a prior attorney's fees award and an additional $100 per day for each day the fine remained unpaid from the date of the finding of contempt), *accepted* 2019 U.S. Dist. LEXIS 128860, at *2. However, such *per diem* sanctions "are only appropriate where the contemnor is able to purge the contempt by his own affirmative act and 'carries the keys of his prison in

his own pocket.'" *Ayres*, 166 F.3d at 997 (quoting *Bagwell*, 512 U.S. at 828).  "[I]n fixing the amount of a fine to be imposed as … a means of securing future compliance, [a court shall] consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *UMWA*, 330 U.S. at 304.

## B.   Compensatory Sanctions

As a compensatory sanction to compensate Plaintiffs for their injuries resulting from the Individual Defendants and Entity Defendants' noncompliance with the December 22, 2021 and January 19, 2022 Orders, the court ORDERS the Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong) and the Entity Defendants (Abrams PC and Rinelli LG), jointly and severally, to pay Plaintiffs $6,210.00 to compensate Plaintiffs for the attorney's fees incurred in bringing the subject Motion for OSC (Dkt. 363) and related proceedings.  The court finds this amount to be a reasonable award of attorney's fees incurred, based on a lodestar calculation of the 20.7 hours Mr. Slater spent in drafting the Motion and reply briefs, at a reasonable hourly rate of $300.00 per hour.  Dkt. 363-1 at 4-5, ¶¶ 8-9; Dkt. 364-1 at 3, ¶¶ 5-6; Dkt. 374-1 at 3, ¶¶ 5-6.

The court ORDERS these Defendants to pay the foregoing additional compensatory sanctions no later than February 16, 2023, and advises these Defendants that failure to pay these sanctions timely may result in an additional finding of contempt and the imposition of additional compensatory and coercive sanctions.

## C.   Coercive Sanctions

As a coercive sanction to induce the Individual Defendants' compliance with the December 22, 2021 Order, the court IMPOSES a per diem fine payable to the court, for which Defendants Abrams, Rinelli, Wooten, and Armstrong are jointly and severally liable, in the amount of $100.00, for each day the amounts due under the December 22, 2021 Order remain unpaid, commencing December 19, 2022.

If the amounts due under the December 22, 2021 Order and the applicable per diem fines ordered by this court have not been paid on or before the 1:30 p.m. hearing on January 20, 2023, the court will order Defendants Abrams, Rinelli, Wooten, and Armstrong to surrender to the U.S. Marshal's Service in court and to remain in custody until all amounts due under the December 22, 2022 Order and the applicable per diem fines ordered by this court have been paid in full.  The court will issue an arrest warrant for any Defendant who fails to appear for the status conference on January 20, 2023.  The January 20, 2023 status conference will be vacated if these amounts are paid in full.

As a coercive sanction to induce the Entity Defendants' compliance with the January 19, 2022 Order, the court IMPOSES a per diem fine payable to the court, for which Defendants Abrams PC and Rinelli LG are jointly and severally liable, in the amount of $100.00, for each day the amounts due under the January 19, 2022 Order remain unpaid, commencing December 19, 2022.

## CONCLUSION

In sum, and for the reasons stated herein, the court FINDS by clear and convincing evidence and ADJUDGES the Individual Defendants to be in contempt of the December 22, 2021 Order (Dkt. 287).  The court further FINDS by clear and convincing evidence and ADJUDGES the Entity Defendants to be in contempt of the January 19, 2022 Order (Dkt. 315).

Accordingly, the court ORDERS:

1. The Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong), jointly and severally, shall pay Plaintiffs $2,856.37 in total compensatory monetary sanctions (representing $2,226.37 under Item 4 and $630 under Item 5 of the December 22, 2021 Order), by no later than January 16, 2023.  This is the remaining amount ordered to be paid under the December 22, 2021 Order for the reasonable attorney's fees and expenses

Plaintiffs incurred due to the Individual Defendants' refusals to answer questions at deposition.  Dkt. 287 at 64, Dkt. 387 at 5-7.

2.  The Entity Defendants (Abrams PC and Rinelli LG), jointly and severally, shall pay Plaintiffs $2,415.00 in compensatory monetary sanctions, by no later than January 16, 2023.  This is the amount ordered to be paid under the January 19, 2022 Order for the reasonable attorney's fees and expenses Plaintiffs incurred in bringing a motion to compel responses to Plaintiffs' requests for production of documents.  Dkt. 315 at 54, Dkt. 387 at 7.

3.  The Individual and Entity Defendants, jointly and severally, shall pay Plaintiffs $6,210.00 in compensatory monetary sanctions, which reflects the reasonable attorney's fees and expenses Plaintiffs incurred in connection with bringing the subject Motion for OSC, Dkt. 363, and related proceedings.  The Individual and Entity Defendants shall make this payment by no later than February 16, 2023.

4.  The Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong), jointly and severally, shall pay to the court a per diem fine of $100.00 commencing December 19, 2022, for each day that all amounts owed under the December 22, 2021 Order remain due and unpaid.

5.  The Entity Defendants (Abrams PC and Rinelli LG), jointly and severally, shall pay to the court a per diem fine of $100.00 commencing December 19, 2022, for each day that all amounts owed under the January 19, 2022 Order remain due and unpaid.

6.  In the event the amounts due under the December 22, 2021 Order and the applicable per diem fines ordered by the court have not been paid in full by January 16, 2023, the Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong) shall appear in Courtroom 6B on January 20, 2023 at 1:30 p.m., for surrender to the U.S. Marshal's Service, where they shall remain in custody until the amounts are paid.  The court will issue an arrest

warrant for any of the Individual Defendants who fails to appear for self-surrender on January 20, 2023, if the amounts due have not been paid.

The court will purge the contempt as to the Individual Defendants (Abrams, Rinelli, Wooten, and Armstrong) and the Entity Defendants (Abrams PC and Rinelli LG) only upon a joint filing by Plaintiffs and these Defendants, in which Plaintiffs and Defendants' counsel attest under penalty of perjury that these Defendants have paid Plaintiffs, and that Plaintiffs have received, all amounts due under the December 22, 2021 and January 19, 2022 Orders, and that Defendants have paid all applicable per diem fines to the court.

IT IS SO ORDERED.

Dated: December 19, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge