# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| RG ABRAMS INSURANCE et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE LAW OFFICES OF CR ABRAMS et al., <br><br> Defendants. | Case No. CV 21-00194-DFM <br><br> ORDER RE: MOTION FOR PERMANENT INJUNCTION (DKT. 522) AND MOTION FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (DKT. 523) |

Late last year, a jury returned a verdict in favor of Plaintiff Robin Goltsman. Before the Court are two post-trial motions: (1) Plaintiff's Motion for a Permanent Injunction, and (2) Defendants and Counterclaimants' Motion for Findings of Fact and Conclusions of Law. See Dkts. 522, 523. The Court heard argument on these motions on February 11, 2025. See Dkt. 538. For the reasons set forth below, both motions are DENIED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    The Parties' Claims and Counterclaims and a Change of Venue

This long litigation saga began in February 2020, when Goltsman and RG Abrams Insurance filed a complaint in the United States District Court for the Northern District of California. See Dkt. 1. The complaint alleged eleven claims against Goltsman's former business partners and associates: the Law

Offices of C.R. Abrams and Christopher R. Abrams; Rinelli Law Group and
Sarah Rinelli; Jack R. Mills; Robin Armstrong; and Cynthia Wooten. See id.
Plaintiffs brought claims under the civil provision of the Computer Fraud and
Abuse Act, 18 U.S.C. § 1030(g) ("CFAA"), as well as the following claims
under state law: fraud and intentional deceit; negligent misrepresentation;
intentional and negligent interference with prospective economic advantage;
conversion; breach of contract; breach of implied covenant of good faith and
fair dealing; breach of fiduciary duty and duty of loyalty; unjust enrichment
and promissory estoppel; and civil conspiracy. See id.

A barrage of counter-complaints followed. In April 2020, Defendant
Abrams filed a counter-complaint against Goltsman for: (1) breach of written
contract; (2) battery; and (3) nuisance. See Dkt. 19. In June 2020, Defendants
Rinelli and Mills filed a counter-complaint against RG Abrams Insurance and
Goltsman for: (1) violation of California Labor Code § 2802; (2) violation of
California Labor Code § 226.8; (3) failure to pay overtime wages in violation
of California Labor Code §§ 1194, 510(a), and California Code of Regulations
§ 11040; (4) failure to pay discharged employees in violation of California
Labor Code §§ 201, 203; (5) failure to provide itemized statements in violation
of California Labor Code § 226; (6) negligent infliction of emotional distress;
and (7) unfair business practices in violation of California Business &
Professions Code § 17200 et seq. (the Unfair Competition Law, "UCL"). See
Dkt. 23. On the same date, Defendants Armstrong and Wooten filed a
counter-complaint against RG Abrams Insurance and Goltsman for: (1)
violation of California Labor Code § 2802; (2) violation of California Labor
Code § 226.8; (3) failure to pay overtime wages in violation of California
Labor Code §§ 1194, 510(a), and California Code of Regulations § 11040; (4)
failure to provide meal and rest periods in violation of California Labor Code
§§ 226.7, 512, and California Industrial Welfare Commission Wage Order 5;

(5) failure to pay discharged employees in violation of California Labor Code §§ 201, 203; (6) failure to provide itemized statements in violation of California Labor Code § 226; (7) negligent infliction of emotional distress; and (8) unfair business practices in violation of the UCL. See Dkt. 24.

At the same time, Defendants moved to dismiss the action for improper venue, or, in the alternative, for an order transferring the action to the Central District of California. See Dkt. 25. In January 2021, the district judge in the Northern District of California agreed that transfer of this action to this Court would serve the convenience of the parties and witnesses and promote the interests of justice, and accordingly granted Defendants' motion to transfer venue to this district. See Dkt. 71.[1]

After the case was transferred, a final counter-complaint followed. In December 2021, the Law Offices of C.R. Abrams and Rinelli Law Group filed a counter-complaint against RG Abrams Insurance and Goltsman as well as a new counter-defendant, Core Seminars, Inc., for: (1) breach of written contract; (2) nuisance; and (3) unfair business practices in violation of the UCL. See Dkt. 282.

**B.    Evidentiary Sanctions and Adverse Inferences**

As the escalating docket numbers indicate, the parties litigated this case heavily. Of importance to the trial and this order, Plaintiffs RG Abrams Insurance and Goltsman filed a motion seeking terminating, evidentiary, and monetary sanctions against Defendants. See Dkt. 353. On July 1, 2022, Judge Audero issued a 120-page report and recommendation that recommended granting Plaintiffs' motion in substantial part. See Dkt. 384 ("Judge Audero's Recommendation").

---

[1] Following its transfer, the case was assigned to United States District Judge Fernando L. Aenlle-Rocha and United States Magistrate Judge Maria A. Audero. See Dkt. 74.

With respect to Plaintiffs' CFAA claim, Judge Audero recommended that it be "deemed established for purposes of this action" under Rule 37(b)(2) that: (1) "Abrams Defendants, Rinelli, and Mills removed Plaintiffs' computers from Plaintiffs' office and remain in possession of Ms. Goltsman's computers"; (2) "Abrams Defendants, Rinelli, and Mills have accessed Plaintiffs' computers, client databases, marketing materials, and other proprietary business materials"; and (3) "Abrams Defendants, Rinelli, and Mills used, and continue to use, Ms. Goltsman's computers and the information contained on those computers to solicit clients throughout California." Id. at 110.

With respect to Plaintiffs' conversion claim, Judge Audero similarly recommended that it "be deemed established for purposes of this action" that Abrams Defendants, Rinelli, and Mills took Plaintiff's client database, marketing materials, and other proprietary business materials—and the computers in which the foregoing business materials were housed, and as a result, Plaintiff suffered monetary and reputational damages. Id. at 110-11.[2]

Judge Audero also recommended that Plaintiffs be permitted to introduce evidence at trial regarding the spoliation of text messages by Abrams, Rinelli, Mills, and Armstrong. See id. at 111. Judge Audero recommended that an adverse inference instruction be given that the jury must presume that the spoliated text messages were unfavorable to those Defendants. See id. Judge Audero also recommended that the Court should presume that the spoliated text messages were unfavorable in adjudicating any pre-trial, trial, and post-trial motions. See id.

---

[2] Notably, Judge Audero recommended denying Plaintiffs' request for evidentiary sanctions under Rule 37(b)(2) as to Defendants Armstrong, Wooten, and Rinelli Law Group. See id. at 109.

On November 2, 2022, Judge Aenlle-Rocha accepted Judge Audero's Recommendation over Defendants' objections and imposed the recommended sanctions. See Dkt. 401.

## C.    **Motion Practice Before Trial**

As the case entered its third and fourth year of litigation, the Court began to winnow the parties' claims and defenses. In September 2023, Judge Aenlle-Rocha granted a motion to dismiss the Law Offices of C.R. Abrams's counterclaim for breach of contract. See Dkt. 425. In January 2024, Judge Aenlle-Rocha granted in part Plaintiff's motions for summary judgment, ruling as follows:

> The court GRANTS in part the First MSJ and partial summary judgment in Plaintiffs' favor as to all of Defendants' "affirmative defenses" for which Defendants bear the initial burden of proof at trial (Dkts. 18, 26, 252). Defendants' "affirmative defenses" that allege only defects in Plaintiffs' prima facie case are STRICKEN. This ruling is not intended to prohibit Defendants from challenging the sufficiency of Plaintiffs' evidence at trial or arguing that Plaintiffs have not met their burden of proof as to any claim. The First MSJ is otherwise DENIED.

> The court GRANTS in part the Second MSJ and partial summary judgment in Plaintiffs' favor as to: (1) the first claim for violation of the CFAA and sixth claim for conversion against Abrams, Rinelli, and Mills; and (2) the eleventh claim for civil conspiracy against Abrams, Rinelli, Mills, and Armstrong. Plaintiffs' damages remain to be established at trial. The Second MSJ is otherwise DENIED.

Dkt. 427 at 22.

## D.    **Reassignment, Jury Trial, and Verdict**

With the parties' consent, this case was reassigned to the undersigned Magistrate Judge on June 12, 2024. See Dkt. 453. Trial followed. Plaintiff pursued four of her original eleven claims at trial: (1) CFAA; (2) conversion; (3) conspiracy; and (4) fraud. See Dkt. 496, Pl.'s Trial Brief at 3-4. Defendants

pursued all of their remaining counter-claims. See id. at 5-7. Trial began on
December 3, 2024. See Dkt. 497. The jury returned its verdict on December
11, 2024. See Dkt. 515.

The jury found that Goltsman had suffered damages of $783,918 for
Abrams, Rinelli, and Mills's violation of the CFAA. See Dkt. 512 ("Jury
Verdict") at 2. The jury also found that Goltsman had suffered damages of
$139,361 for Abrams, Rinelli, and Mills's conversion of her property. See id. at
3. Both amounts were far less than the amounts sought by Goltsman at trial.
See Dkt. 519, RT 12/10/2024 II at 21-23 (arguing for damages of $2,726,124
and $3,880,267, respectively, on Goltsman's CFAA and conversion claims).

The jury rejected Goltsman's conspiracy claim against Defendant
Wooten. See id. at 4. It also rejected Goltsman's fraud claims against Mills,
Armstrong, and Wooten. See id. at 5-10.

The jury rejected every counterclaim. It rejected Abrams's counterclaim
for battery against Goltsman. See id. at 12. It also rejected the nuisance
counterclaims brought by Abrams, Law Offices of CR Abrams, and Rinelli
Law Group. See id. at 14. And it rejected the Labor Code and UCL claims
brought by Armstrong, Wooten, and Rinelli. See id. at 18-28.

**E.    Post-Trial Motions**

Plaintiff filed a Motion for Permanent Injunction. See Dkt. 522
("Injunction Motion"). Defendants opposed. See Dkt. 527 ("Injunction
Opp'n"). Plaintiff replied. See Dkt. 530 ("Injunction Reply").

Defendants filed a Motion for Findings of Fact and Conclusions of Law.
See Dkt. 523 ("JMOL Mot."). Plaintiff opposed. See Dkt. 528 ("JMOL
Opp'n"). Defendants replied. See Dkt. 529 ("JMOL Reply").

## II.    PLAINTIFF'S INJUNCTION MOTION

Plaintiff moves for a permanent injunction based on the Court's finding
that Abrams, Rinelli, and Mills converted her property. See Injunction Motion.

Plaintiff clarifies that she seeks the return of "the Goldmine client database, the
Marketing Computer and Ms. Goltsman's marketing materials, and any copies
of the latter two categories of items that may have been made." Injunction
Reply at 21. Plaintiff also seeks to enjoin Defendants from using those items
after they are returned, although acknowledges that Defendants may continue
to use the Goldmine client database. See id.

## A.    Legal Standard

"To be entitled to a permanent injunction, a plaintiff must demonstrate:
(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3)
that remedies available at law are inadequate; (4) that the balance of hardships
justify a remedy in equity; and (5) that the public interest would not be
disserved by a permanent injunction." Indep. Training & Apprenticeship
Program v. California Dep't of Indus. Rels., 730 F.3d 1024, 1032 (9th Cir.
2013). "The standard for a preliminary injunction is essentially the same as for
a permanent injunction with the exception that the plaintiff must show a
likelihood of success on the merits rather than actual success." Amoco Prod.
Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987).

## B.    Irreparable Injury

The Court focuses on irreparable injury. A preliminary injunction may
issue only upon a showing that "irreparable injury is likely in the absence of an
injunction." Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 865 (9th
Cir. 2017) (citation omitted). "Irreparable harm is traditionally defined as harm
for which there is no adequate legal remedy, such as an award of damages."
Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014).

Plaintiff argues that she has been irreparably harmed in four ways: (1)
Defendants misappropriated her proprietary business materials; (2) Defendants
prevented Plaintiff from contacting her clients on the Goldmine client database
to make insurance sales; (3) Plaintiff has suffered reputational damages; and

(4) Plaintiff cannot restart her business without the Goldmine client database. See Injunction Motion at 4-5.

Plaintiff has not demonstrated a likelihood of irreparable harm in the absence of injunctive relief because her harms are monetary and speculative. "Mere financial injury . . . will not constitute irreparable harm if adequate compensatory relief" is available. Goldie's Bookstore, Inc. v. Superior Court of the State of Cal., 739 F.2d 466, 471 (9th Cir. 1984) (denying injunction where harm was easily calculable and compensable in damages); see also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."). The threat of irreparable harm must be "immediate" to warrant relief. See Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). "Speculative injury cannot be the basis for a finding of irreparable harm." In re Excel Innovations, Inc., 502 F.3d 1086, 1098 (9th Cir. 2007).

The Court instructed the jury on damages at the beginning and end of trial. The jury was instructed that Plaintiff was entitled to damages for violation of the CFAA if she suffered a "loss," defined as "any reasonable cost to the victim," including "any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service." Dkt. 509 ("Jury Instructions") at 20. As to conversion, the jury was instructed that Plaintiff was entitled to damages for "all losses which are the natural, reasonable, and proximate result of the wrongful act." Id. at 21.

Plaintiff's economic expert, Evan Schulz, PhD, testified at trial as to damages. Dr. Schulz testified that "the value of Ms. Goltsman's business interests on the eve of the damages period are no less than $2.7 million." Dkt. 516 at 8:9-11. Dr. Schulz arrived at that figure by looking at Plaintiff's tax returns and other documents to determine profitability. See id. at 8:14-15:22.

Ultimately, the jury awarded Plaintiff $783,918 for her CFAA claim, and $139,361 for her conversion claim. <u>See</u> Jury Verdict at 2, 3. In total, the jury awarded Plaintiff $923,279—nearly a million dollars—for loss resulting from Abrams, Rinelli, and Mills's unauthorized access of Plaintiff's computer and wrongful taking of her property. Plaintiff has not persuaded the Court that her alleged irreparable harms—such as the inability to contact clients and reputational harm—were not considered by the jury and adequately compensated by the award of monetary damages.

Put simply, Plaintiff alleged that she was unable to generate income because Defendants misappropriated her property. Plaintiff's expert opined that she should receive $2.7 million dollars for that conduct. The jury partially agreed and awarded Plaintiff a substantial sum. The jury's damages award belies Plaintiff's contention that her harms are irreparable.

Plaintiff's theory of irreparable harm is distinguishable from the cases on which she relies. Those cases involve companies that required an injunction, otherwise they would suffer immediate and direct harms to their reputation and market position. <u>See, e.g.</u>, <u>WeRide Corp. v. Kun Huang</u>, 379 F. Supp. 3d 834, 853-54 (N.D. Cal. 2019) (finding irreparable harm where plaintiff demonstrated its market position would be set back, and trade secrets widely disclosed). By contrast, Defendants' misappropriation occurred at the end of 2019. <u>See</u> Compl. ¶ 16. Plaintiff has not had access to her Marketing Computer, Goldmine client database, and marketing materials for more than five years. What's more, Plaintiff acknowledged at the hearing that she does not intend to continue working in the insurance industry. The evidence at trial indicates that Plaintiff was winding down her business and considering retirement by 2019. <u>See</u> Complaint ¶ 10 (alleging that Plaintiff was considering retirement in 2016); Dkt. 531, RT 12/3/2024 at 181.

The damage has been done. Whatever loss of control over business reputation and damage to goodwill caused by the Defendants are no longer speculative. These harms have already taken place and there is no reason why they cannot be adequately compensated with money damages. Indeed, the entire purpose of Dr. Schulz's testimony was to convince the jury that a dollar value could be assigned to the harm that Plaintiff faced.

## C.    **Double Recovery**

The Court is also concerned that awarding an injunction to Plaintiff would result in an impermissible double recovery.

In California, available remedies for conversion "include specific recovery of property with damages for its detention and damages based on the value of the property." Flores v. Cal. Dep't of Corr. & Rehab., 224 Cal. App. 4th 199, 206 (2014) (citing Cal. Civ. Code §§ 3336, 3379). A plaintiff also has the option to recover "damages for the value of the property at the time of conversion plus interest and the expense of pursuing the property." Allstate Leasing Corp. v. Smith, 238 Cal. App. 2d 128, 132 (1965). Put another way, "California law provides for the recovery of the fair market value of converted property at the time of conversion, or specific recovery and damages for loss of use, but not both." Trowbridge Sidoti LLP v. Taylor, No. 16-771, 2018 WL 2670656, at *4 (C.D. Cal. June 4, 2018) (citing Allstate Leasing, 238 Cal. App. 2d at 132).

In Trowbridge, the jury found that defendant converted plaintiff's domain name, "syndicationlawyers.com," and awarded $7,800 in damages for that domain. See 2018 WL 2670656, at *2. After trial, plaintiff moved for a permanent injunction seeking the return of the domain name. See id. at *3. The Court denied the motion on several grounds, one of which was that an injunction would result in double recovery: "Because, as instructed, the jury presumably awarded TS the fair market value of the converted domain name,

an amended judgment providing an injunction would be an impermissible double recovery to the extent that TS's monetary recovery was premised on the complete loss of the domain name, as opposed to a loss of use." Id. at *4.

Like Trowbridge, the Court has similar concerns here. The Court instructed the jury as follows: "[I]it is not in dispute that Abrams, Rinelli, and Mills converted Goltsman's client database, marketing materials, and other proprietary businesses, and the computers in which these were housed. Damages for conversion are calculated based on the loss to Goltsman. This amount must include all losses which are the natural, reasonable, and proximate result of the wrongful act." Jury Instructions at 21 (emphasis added). The jury awarded Plaintiff $139,361 in damages for conversion, with $69,173 for "past economic loss earnings," $21,188 for "prejudgment interest on past economic loss," and "$50,000 for "past noneconomic loss, including physical pain and mental suffering." Jury Verdict at 3.

The jury was instructed to consider "all losses" that could result from the wrongful conversion of Plaintiff's property, then awarded her $69,173 for past economic loss. The jury presumably understood "all losses" to encompass the complete loss of Plaintiff's property, not simply Plaintiff's inability to continue using her computer and access the Goldmine Client Database. Granting the injunction would thus result in Plaintiff taking possession of the Goldmine client database, Marketing Computer, and her marketing materials, the loss of which Plaintiff has now been compensated for. That outcome is an impermissible double recovery and not equitable. See 14A Ca. Jur. Conversion § 9 ("[W]here a wrongdoer has taken personal property, the owner may elect between (1) the right of ownership and possession (with the remedy of specific recovery) and (2) the right to compensation (with the remedies of damages for conversion or quasi-contract recovery of value on theory of waiver of tort)."); Nat'l Diversified Servs., Inc. v. Bernstein, 168 Cal. App. 3d 410, 418 (1985)

(remedies for conversion "include specific recovery of the property, or its present value, plus damages for the period of its detention; or damages for the value of the property at the time of conversion plus interest and the expense of pursuing the property") (citation omitted).

The jury's specific damages award also counsels against an injunction. The Court instructed the jury as follows: "The damages claimed in this case fall into two categories called economic damages and noneconomic damages. You will be asked on the verdict from to state the two categories separately. Economic damages include things like past and future lost earnings. Noneconomic damages include things like past and future mental suffering or emotional distress." Jury Instructions at 16. The jury awarded Plaintiff $68,173 for "Past economic loss earnings" but $0 for "Future economic loss." Jury Verdict at 3. The jury thus appeared to conclude that Defendants' conversion of Plaintiff's property was fully compensated by money damages for past economic loss, and did not have any future economic loss associated with it.

The Court finds that the jury's damages award appropriately compensated Plaintiff for the wrongful taking of her property. Awarding Plaintiff specific recovery of the Marketing Computer, Goldmine client database, and marketing materials would go beyond the assigned damages and constitute an impermissible double recovery.

## III.    DEFENDANTS' MOTION

Defendants seek resolution of their UCL counterclaims and move for relief under Federal Rule of Civil Procedure 50.

## A.    Defendants' UCL Counterclaims

As the UCL provides for equitable relief only, the parties agreed that those claims would be decided by the Court following the jury trial. The Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rule of Civil Procedure.

### 1.    Legal Standard

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Id. Findings of facts in a civil case are by a preponderance of the evidence. "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision." Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001) (internal citations omitted). "The district court is not required to base its findings on each and every fact presented at trial." Id.

The unfair competition statute "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Grp., Inc., 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prod. Code §§ 17200 et seq.). "An unlawful act is one "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Id. (quoting Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). "A business practice is unfair when it significantly threatens or harms competition." ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1039 (9th Cir. 2016) (citation omitted). "A fraudulent business practice is one likely to deceive the public." Id.

The Seventh Amendment provides that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Ninth Circuit holds that "it would be a violation of the Seventh Amendment right to jury trial for the court to disregard a jury's finding of fact." Acosta v. City of Costa Mesa, 718 F.3d 800, 828 (9th Cir. 2013) (citing Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991)). "Thus, in a case where legal claims are tried by a jury and

equitable claims are tried by a judge, and the claims are 'based on the same
facts,' in deciding the equitable claims 'the Seventh Amendment requires the
trial judge to follow the jury's implicit or explicit factual determinations.'"
<u>L.A. Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993)
(citing <u>Miller v. Fairchild Indus.</u>, 885 F.2d 498, 507 (9th Cir. 1989), <u>cert.
denied</u>, 494 U.S. 1056 (1990)).

### 2.    Findings of Fact

Defendants' UCL counterclaims are predicated on their allegations that
Plaintiff violated the California Labor Code and California Penal Code. <u>See</u>
Dkt. 23 ¶¶ 31-38; Dkt. 24 ¶¶ 36-43; Dkt. 282 ¶¶ 19-23.

With respect to Defendants' counterclaims, the jury returned a verdict
finding that Defendants did not prove by a preponderance of evidence that
Plaintiff was liable for any misconduct. Specifically, the jury found that
Defendants did not prove their counterclaims for breach of contract, battery,
nuisance, nonpayment of overtime compensation, nonpayment of wages,
failure to provide itemized wage statements, failure to reimburse, rest break
violations, or meal break violations. <u>See</u> Jury Verdict at 11-29. And although
not presented as a counterclaim, Defendants presented no admissible evidence
at trial establishing by a preponderance of evidence that Plaintiff was engaged
in stalking or any other criminal behavior.

To be sure, Defendants presented some evidence to support their
counterclaims. For example, Wooten, Armstrong, and Rinelli testified about
working unpaid overtime and not being able to take meal/rest periods as
required by the Labor Code. <u>See, e.g.</u>, Dkt. 533, RT 12/5/2024 vol. I at 17-18,
55, 58-59, 60-61; Dkt. 517, RT 12/5/2024 vol. II at 64. However, although the
jury made no express finding about the credibility of this testimony, implicit in
their finding that Defendants' counterclaims were not proven is a finding that
these witnesses were not credible. The Seventh Amendment requires the Court

to follow these implicit factual determinations. Accordingly, the Court adopts, as it must, the jury's determination that Defendants failed to prove by a preponderance of the evidence that Plaintiff violated the California Labor Code or engaged in common law nuisance or other violations of law. In the absence of evidence independent of the jury's rejection of Defendants' arguments to show that Plaintiff was engaged in forbidden behavior, the Court has no basis to find otherwise.

### 3. Conclusions of Law

The UCL prohibits unfair competition, defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendants' UCL counterclaims arguably proceed under the "unlawful" and "unfair" prongs.[3] "With respect to the unlawful prong, virtually any state, federal or local law can serve as the predicate for an action under section 17200." Maravilla v. Rosas Bros. Constr. Inc., 401 F. Supp. 3d 886, 901 (N.D. Cal. 2019) (citation omitted). Notably, "any business act or practice that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair business practice." Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178 (2000). As the UCL "borrows violations of other laws," Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (Cal. 1999), when "a statutory claim fails, a derivative UCL claim also fails," Aleksick v. 7-Eleven, Inc., 205 Cal. App. 4th 1176, 1185 (2012).

As discussed above, the Court is bound by the jury's findings inasmuch as Defendants' UCL counterclaims are based on the same facts as the counterclaims decided by the jury. Given the jury's findings, in addition to its own findings that Defendants failed to prove that Plaintiff's business practices

---

[3] Defendants have not presented any evidence to support a claim that Plaintiff engaged in a fraudulent business practice.

15

were unlawful, unfair, or fraudulent, the Court concludes that Defendants' UCL counterclaims fail.

## B.    Rule 50(b) Motion for Judgment as a Matter of Law

Defendants broadly ask that the Court set aside the jury's verdict. See JMOL Mot. at 3-4. As best the Court understands, Defendants contend that the jury's verdict is not supported by substantial evidence, the jury awarded duplicative damages, and that the damages award should be set aside based on Plaintiff's unauthorized practice of law. See id.

### 1.    Legal Standard

Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. See Fed. R. Civ. P. 50(a). If such a motion made at the close of all the evidence is denied, Rule 50(b) allows the moving party to "renew" its motion within twenty-eight days after the court's entry of final judgment in the case. See Fed. R. Civ. P. 50(b).

"The test is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." Estate of Diaz v. City of Anaheim, 840 F.3d 592, 604 (9th Cir. 2016) (internal quotation marks omitted). In considering a Rule 50(b) motion, the Court "may not make credibility determinations or weigh the evidence," but rather "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009) (citations omitted and cleaned up).

"[A] proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." Id. "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." Freund v.

Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003). However, Rule 50(b)
"may be satisfied by an ambiguous or inartfully made motion" under Rule
50(a). Reeves v. Teuscher, 881 F.2d 1495, 1498 (9th Cir. 1989). "Absent such a
liberal interpretation, the rule is a harsh one." Go Daddy, 581 F.3d at 961
(citation omitted). When ruling on a Rule 50(b) motion based on grounds not
asserted in a Rule 50(a) motion, the Court is "limited to reviewing the jury's
verdict for plain error, and should reverse only if such plain error would result
in a manifest miscarriage of justice." Id.(citation omitted).

**2.  Discussion**

At trial on December 6, 2024, Defendants' counsel made an oral motion
under Rule 50(a) for judgment as a matter of law:

> All of the counts on insufficient evidence, lack of adequate proof
> of causation, lack of adequate proof of damages. There's no
> evidence of any fraud. There's no evidence on any of the elements
> to establish a cause of action for fraud. The conspiracy cause of
> action should also be dismissed by the Court, because there's no
> such thing as a conspiracy cause of action. It doesn't exist. And
> this was briefed in my statement of law and fact submitted prior to
> trial. So those are the grounds, Your Honor.

Dkt. 528-1, Declaration of Michael A. Slater ¶ 4, Ex. C at 4:21-5:9. The Court
deferred ruling on Defendants' motion until after the jury's verdict. See id. at
5:10-11.

At trial on December 10, 2024, before the verdict, Defendants' counsel
again made an oral motion under Rule 50(a) for judgment as a matter of law:

> I would also like to make a motion under Rule 50 with regard to
> intentional misrepresentation claim of plaintiff against Mr. Mills.
> As the Court indicated in its ruling, there was no close relationship
> or special relationship between the parties. Court's Special Final
> Jury Instruction Number 20 says, with respect to Mr. Mills, that he
> used his place of trust to allow the other defendants access. Court's
> already ruled there was no special relationship, no special place of

17

trust. So we're making a motion to dismiss that claim against Mr. Mills.

Slater Decl. ¶ 5, Ex. D at 23:17-24:3. The Court again deferred ruling on Defendants' motion pending the jury's verdict. <u>See id.</u> at 24:4-6.

Defendants' renewed motion for judgment as a matter of law argues that the jury's damages findings are inconsistent, Defendants should have prevailed on their wage and hour counterclaims, and that the jury's damages award should be set aside because Plaintiff was engaged in the unauthorized practice of law. Defendants' Rule 50(b) motion raises arguments not made in either of Defendants' oral Rule 50(a) motions. Nonetheless, even considering the newly raised arguments, Defendants have not shown that they are entitled to judgment as a matter of law.

a.    <u>Damages</u>

The jury found that Plaintiff's damages for Abrams, Rinelli, and Mills's violation of the CFAA were $783,918, and that Plaintiff's damages for Abrams, Rinelli, and Mills's conversion of her property were $139,361. <u>See</u> Jury Verdict at 2, 3. Defendants argue that the jury "answered the same exact question but came up with completely different answers," which is "impossible to reconcile." JMOL Mot. at 4. Defendants believe that damages must either be $0, $139,361, <u>or</u> $783,918. <u>See id.</u>

Defendants appear to suggest that the jury's damages awards are impermissibly duplicative. In California, a plaintiff "is not entitled to more than a single recovery for each distinct item of compensable damages supported by the evidence." <u>Tavaglione v. Billings</u>, 4 Cal. 4th 1150, 1158 (1993). "Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." <u>Id.</u> However, the jury's finding of the appropriate amount of damages is given substantial deference. <u>See</u> <u>Del Monte Dunes at Monterey, Ltd. v. City of Monterey</u>, 95 F.3d 1422,

1435 (9th Cir. 1996). The Court "must uphold the jury's finding unless the
amount is grossly excessive or monstrous, clearly not supported by the
evidence, or based only on speculation or guess work." Id. "The Court must
strive to construe the awards such that they are logical and probable."
Schutzky Distributors, Inc. v. Kelly, 643 F. Supp. 57, 62 (N.D. Cal. 1986).

The jury awarded Plaintiff $783,918 for violation of the CFAA. The
CFAA provides a private right of action for "any person who suffers damage
or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). The
statute defines loss to mean "any reasonable cost to any victim, including the
cost of responding to an offense, conducting a damage assessment, and
restoring the data, program, system, or information to its condition prior to the
offense, and any revenue lost, cost incurred, or other consequential damages
incurred because of interruption of service." Id. § 1030(e)(11). The CFAA
limits a plaintiff to "economic damages." Creative Computing v.
Getloaded.com LLC, 386 F.3d 930, 935 (9th Cir. 2004).

The jury awarded Plaintiff $139,361 for conversion. California Civil
Code § 3336 governs conversion damages:

> The detriment caused by the wrongful conversion of personal
> property is presumed to be:
>
> First—The value of the property at the time of the conversion,
> with the interest from that time, or, an amount sufficient to
> indemnify the party injured for the loss which is the natural,
> reasonable and proximate result of the wrongful act complained of
> and which a proper degree of prudence on his part would not have
> averted; and
>
> Second—A fair compensation for the time and money properly
> expended in pursuit of the property.

"Conversion damages are calculated based on the detriment caused to
the plaintiff. Such detriment . . . is presumed to be the value of the property at
the time of the conversion, with the interest from that time, or, an amount

sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted." Greif v. Sanin, 74 Cal. App. 5th 412, 449 (2022). Damages for emotional distress growing out of a defendant's conversion of personal property "are recoverable." Gonzales v. Personal Storage, Inc., 56 Cal. App. 4th 464, 477 (1997).

While it is true that Plaintiff's CFAA and conversion claims arise from the same conduct—Defendants' wrongful appropriation of Plaintiff's property—the Court finds that the jury's damages awards do not constitute double or duplicative recovery. Plaintiff testified at trial that she was offered $3 million for her business and that she made approximately $270,000 per year in profits from her business in the ten years leading up to 2019. See Slater Decl. ¶ 2, Ex. A at 12:22-14:21, 15:4-16:10. Plaintiff's economic expert testified at trial that Plaintiff's overall damages were no less than $2.7 million. See id. ¶ 3, Ex. B at 8:4-15:23. As such, the evidence presented at trial supports an award of up to approximately $2.7 million. The jury could have intended to assign portions of the total damages awarded to the CFAA and conversion causes of action.

Furthermore, the jury was instructed that CFAA damages included "any revenue lost, cost incurred, or other consequential damages incurred," whereas conversion damages included "all losses which are the natural, reasonable, and proximate result of the wrongful act." See Jury Instructions at 20, 21. The jury could have decided that Plaintiff's "loss" under the CFAA was the revenue lost, while her conversion damages were the value of the property taken and resulting non-economic damages. Indeed, the jury awarded Plaintiff $139,361 for conversion, of which $50,000 was for "past noneconomic loss, including physical pain and mental suffering." Jury Verdict at 3. The Court does not find

that the jury's damages awards are impermissibly duplicative or impossible to
reconcile.

      b.   <u>Wage and Hour</u>

There was sufficient evidence presented at trial from which the jury
reasonably could have concluded that Plaintiff was not liable for Defendants'
wage and hour claims. Defendants merely parrot their counterclaim allegations
without any citations to the trial transcripts.

Defendants argue that because Plaintiff did not keep records of hours
worked, the burden of proof should have been placed on Plaintiff, "verdict
form to the contrary." JMOL Mot. at 9. Defendants misstate the law. "The
United States Supreme Court decided in <u>Anderson v. Mt. Clemens Pottery
Co.</u>, <u>supra</u>, that in cases such as the present one, where the employer has failed
to keep records required by statute, the consequences for such failure should
fall on the employer, not the employee. In such a situation, imprecise evidence
by the employee can provide a sufficient basis for damages." <u>Hernandez v.
Mendoza</u>, 199 Cal. App. 3d 721, 727 (1988). Still, the initial burden remains
with the employee. <u>See id.</u> ("In such a situation we hold that an employee has
carried out his burden if he proves that he has in fact performed work for
which he was improperly compensated and if he produces sufficient evidence
to show the amount and extent of that work as a matter of just and reasonable
inference. The burden then shifts to the employer . . . .") (citation omitted).
The Jury Instructions accurately reflected the law: "If Goltsman did not keep
accurate records of the hours worked by Armstrong, Wooten, and Rinelli, then
they may prove the number of overtime hours worked by making a reasonable
estimate of those hours." Jury Instructions at 33.

Defendants argue that Plaintiff's paystubs were inaccurate as a matter of
law because they did not include the last 4 digits of the employee's social
security number, in violation of California Labor Code § 226(a)(8). <u>See</u> JMOL

Mot. at 12. Even assuming Plaintiff's failure to include social security numbers on its wage statements were technical violations, Defendants cannot recover for these violations because they did not "suffer injury" as a result. California Labor Code § 226(e) allows recovery only when an employee suffers "injury as a result of a knowing and intentional failure by an employer." "By employing the term 'suffering injury,' the statute clearly requires that an employee is not eligible to recover for violations of section 226(a) unless he or she demonstrates some injury from the employer's violation." Elliot v. Spherion Pacific Work, LLC, 572 F. Supp.2d 1169, 1181 (C.D. Cal. 2008). The jury found that Rinelli did not receive itemized wage statements but that she did not establish that the failure was "knowing and intentional." Jury Verdict at 22. Accordingly, no injury was suffered.

      c.    Unauthorized Practice of Law

Defendants suggest that Plaintiff may not recover damages because she was engaged in the unauthorized practice of law. See JMOL Mot. at 16-17. Defendants provide no evidence to support that contention, which is unfounded. Moreover, Defendants are foreclosed from pursuing the affirmative defense of unclean hands by Judge Aenlle-Rocha's summary judgment order. See Dkt. 427.

## IV. CONCLUSION

Both motions are DENIED in their entirety.

Date: April 15, 2025

DOUGLAS F. McCORMICK
United States Magistrate Judge